In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00083-CV**
_____

**SOUTHEAST TEXAS VETERINARY CLINICS, PLLC, Appellant**

**V.**

**ROBERT B. WILCOX, Appellee**

_____

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-205,503**
_____

**MEMORANDUM OPINION**

This is an appeal from a modification of a temporary injunction ("TI") granted in favor of Appellant Southeast Texas Veterinary Clinics, PLLC ("Appellant" or "STVC") and against Dr. Robert B. Wilcox ("Appellee" or "Wilcox"), relating to alleged non-competition and non-solicitation agreements. The trial court granted a TI on May 1, 2020, which limited Wilcox from competing against STVC or soliciting or working with STVC's clients or referral sources. The trial court then modified the TI on May 12, 2020. Wilcox filed a motion to modify, and the trial

1

court modified the TI again on April 7, 2021, and STVC filed a notice of an interlocutory appeal. After filing the notice of appeal, in the trial court STVC filed Plaintiff's Motion to Reconsider Order Granting Defendant Robert B. Wilcox, DVM's Motion to Modify Temporary Injunction, and Wilcox filed a response. After a hearing, the trial court again modified the TI on July 16, 2021. For the reasons explained herein, we affirm.

## Background

Initial TRO

On March 15, 2020, and after filing its Original Petition,[1] STVC obtained a temporary restraining order ("TRO") against two defendant veterinarians—Appellee Dr. Robert Wilcox and Dr. Donna Hall—and against Dayton Veterinary Clinic ("the Dayton clinic"). The TRO ordered that Dr. Wilcox not participate in any business or practice within a twenty-mile radius of STVC and that Wilcox not contact or solicit clients, referrals, or business from STVC. The TRO also ordered that the "Dayton Defendants" (Dr. Hall and the Dayton Clinic) are prohibited from retaining Wilcox as a veterinary surgeon, that they not employ or recruit anyone employed by STVC, and that they not disparage STVC. The TRO was to be in effect for fourteen days, and it required STVC to post a $500 bond.

---

[1] The appellate record does not include a copy of STVC's Original Petition.

2

<u>STVC's First Amended Petition</u>

In its amended petition, STVC asserted that it operates a veterinary practice in Jefferson County that is "one of a few veterinary practices in the region to provide advanced surgical services for animals." STVC alleged it acquired referrals, goodwill, and other assets from Wilcox Veterinary Clinic, and as part of the transaction, Wilcox agreed to work for STVC under an employment agreement that included a non-competition agreement, a non-solicitation agreement, and a confidentiality agreement ("the Restrictive Covenants"). The employment agreement had a two-year term that could be extended by written agreement, Wilcox was to receive a monthly salary, and Wilcox agreed not to compete with STVC within a twenty-mile radius of the clinic and not to solicit directly or indirectly "actual or prospective clients, referrals, or business of STVC on his own behalf or for any other person for 'the purpose of providing similar services or products'" as provided by STVC. STVC alleged that it was induced to purchase Wilcox's clinic by the non-competition and non-solicitation agreements and that Wilcox had agreed the Restrictive Covenants were reasonable in duration and scope.

According to STVC, Wilcox's employment with STVC ended on January 1, 2020, and the parties were unable to agree on a new employment agreement. STVC alleged that Wilcox misrepresented to other veterinarians that STVC had terminated his employment, and that he began competing with STVC directly and soliciting its

3

customers, including attempting to work with or solicit referrals from a clinic within twenty miles of STVC. STVC alleged that it sent Wilcox cease and desist letters, but Wilcox continued to practice at a clinic within twenty miles of STVC. STVC learned that Wilcox was to begin working at the Dayton clinic at times, which was a referral STVC acquired in purchasing Wilcox's practice. STVC informed the Dayton clinic of the Restrictive Covenants and demanded that all activities that violated the Restrictive Covenants cease, but the Dayton clinic did not comply, and it continued to use Wilcox to perform surgeries.

STVC alleged that Wilcox had violated the Restrictive Covenants, defamed STVC and that the Dayton clinic and Dr. Hall had tortiously interfered with the Restrictive Covenants. STVC also alleged claims against Wilcox for breach of contract and fraud. STVC brought a claim against the Dayton Defendants for tortious interference. STVC's petition included an application for a temporary restraining order and temporary and permanent injunctions, requesting that Wilcox not engage in any business or practice within twenty miles of STVC in competition with STVC, that he not solicit clients or business from STVC, that the Dayton Defendants not employ Wilcox, and that Wilcox not disparage STVC. STVC requested the injunctive relief be in place until January 1, 2023.

<u>May 2020 TI and Modified TI</u>

On May 1, 2020, the trial court signed a temporary injunction against the defendants to remain in effect until trial on the merits. On May 12, 2020, the trial court signed a Modified Temporary Injunction that clarified the parameters under which Wilcox could provide emergency veterinary services to others. Relevant to this appeal, the modified TI required that Dr. Wilcox not contact or solicit

> . . . any of the clients, referrals, referral sources, and business of STVC, corresponded with in Exhibit A, which is the e-mail sent out by Dr. Wilcox on or about March 4, 2020, at 10:57 a.m., for the purpose of providing similar services or products as provided by Southeast Texas, which includes, but is not limited to, advertising or promoting that Dr. Wilcox is conducting orthopedic or other advanced surgeries.

<u>Wilcox's March 2021 Motion to Modify TI</u>

On March 18, 2021, Wilcox filed a Motion to Modify Temporary Injunction arguing that the TI "imposes an unreasonable restraint on trade and is void as a matter of law." Wilcox argued that the TI was overbroad and ambiguous such that he could not determine "what persons and/or clinics he is restricted from working with or for or [] what specific activities he is restricted from performing." Wilcox stated that he had been unable to work anywhere for nine months without risking a violation of the TI and because the initial trial date was cancelled due to COVID restrictions and no new trial date was set, "there is no end in sight."

Wilcox argued that a TI is void if it does not include a trial setting and vacating a trial date indefinitely has the effect of removing the trial setting from the TI order

and rendering the TI void.[2] Wilcox argued that the TI was more restrictive than the Employment Agreement, which permitted Wilcox to engage in "periodic veterinary relief services[,]" and the TI did not preserve the status quo. Wilcox also argued that STVC's alleged damages are not irreparable, the TI imposes an unreasonable and illegal restraint on trade, the TI is overbroad and vague regarding the types of veterinary services Wilcox is restricted from performing, and the TI's restriction on solicitation is unenforceable for lack of geographical limitations. Wilcox requested that the trial court rule on his pending motion for partial summary judgment addressing the enforceability of the non-competition restriction, declare the TI void, or modify the TI "to satisfy the requirements of the law[.]"

Attached to Wilson's motion to modify was a transcript of the deposition of Dr. Brady Hall, the principal veterinarian for STVC. In his deposition, Dr. Hall described his competition as "[e]very single veterinary clinic in Texas[]" and "every vet clinic in the nation[,]" and he stated that a referral source was not a potential client if they were "more than a day's drive" from STVC. Also attached was a transcript of Dr. Wilcox's deposition, in which he stated that he understood that the non-solicitation restriction in the Employment Agreement was supposed to be limited to a twenty-mile radius from the STVC clinic.

---

[2] Citing *Danbill Partners, L.P. v. Sandoval*, 621 S.W.3d 738, 752-53 (Tex. App.—El Paso 2020, no pet.).

STVC's Response to Wilcox's Motion to Modify TI

In its response, STVC argued that Wilcox's motion to modify was an attempt to have a "backdoor" appeal of the TI and STVC restated the arguments it had already made in its pending motion for partial summary judgment. STVC also argued that Wilcox's motion to modify the TI was in essence asking the trial court to disregard the restrictive covenants in the employment agreement to allow Wilcox to compete with STVC within twenty miles of STVC and for referral sources for which STVC paid Wilcox. According to STVC, Wilcox cannot show that the twenty-mile radius restriction imposed by the TI was not reasonable to maintain the status quo. STVC further argued that a movant seeking a TI to enforce a restrictive covenant is not required to prove irreparable injury but is only required to prove that the defendant intends to do an act that would breach the covenant.[3]

Hearing on Motion to Modify TI

The trial court held a hearing on the motion to modify in April 2021. Wilcox pointed out to the trial court that when the TI was initially ordered, a trial date was set for two months later, but "COVID-19 happened[,]" and there was no longer a trial date in the case. Wilcox argued that the TI went beyond the contractual Restrictive Covenants, that some aspects of the underlying Restrictive Covenants

---

[3] Citing *Munson v. Milton*, 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, pet. denied).

7

were invalid as a matter of law, and that the TI was faulty because it referenced an external document that had "nothing to do with the underlying employment agreement[]"—a March 4, 2020 email by Dr. Wilcox sent to a Listserv for individuals associated with veterinary clinics—instead of stating what the restrictions were going to be in the temporary injunction. According to Wilcox, the entities listed in the email "go above and beyond what the employment agreement says." According to Wilcox, the non-solicitation clause of the modified TI did not include a geographic limitation and he "literally has no idea who he can and cannot solicit or talk to about his services because he [did not] have a list[]" of STVC's clients or referral sources. Wilcox argued that he had never seen STVC's "list of referrals" from which he was barred from soliciting, he had no idea whom he could solicit or talk to about his services, and he complained that STVC did not want to show the list to Wilcox yet wanted him to comply with it. He also argued that the non-solicitation restriction needed both a geographic limitation and a connection to him. According to Wilcox, a year after the modified TI issued, there was no evidence of immediate irreparable harm. Wilcox also argued that he was scared to work anywhere, and he informed the court he was working for a clinic in Arkansas that he had vetted as never having had contact with STVC.

STVC explained that the geographic scope in the modified TI included referral sources and that the March 2020 email included veterinarians in the

Southeast Texas region, but it included some, but not all, of the referral sources STVC bought from Wilcox. STVC stated that Wilcox was not barred from working for clinics in Houston. According to STVC, Dr. Wilcox need not have had previous dealings with an entity for the TI to lawfully bar him from doing business with that entity by the non-solicitation restriction.[4] STVC also argued that COVID had prevented it from taking advantage of the goodwill acquired from Wilcox and building its own reputation. STVC stated it would be willing to enter into a Rule 11 agreement with Wilcox for him to view, but not possess, the list of referral sources from which he was barred from soliciting.

The court stated on the record that a geographic limitation was of concern and was the clearest aspect of the underlying agreement, and that the modified TI should not be "this nebulous order not to do work for people who might be connected with [STVC]." The court also noted that COVID had prevented the case from going to trial and suggested that it could consider that

> . . . things have changed. The arguments of irreparable harm and the arguments regarding restriction are not as strong because the plaintiffs ha[ve] had a year to mitigate or potentially mitigate those irreparable or arguably irreparable damages[.]

---

[4] Citing generally *Richard Gehrke & Pac. Cos. v. Merritt Hawkins & Assocs., LLC*, No. 05-19-00026-CV, 2020 Tex. App. LEXIS 504 (Tex. App.—Dallas Jan. 17, 2020, pet. denied) (mem. op.).

The court stated that the original intent was not for Wilcox to have to drive out of state to work and that the injunction should be "strictly limited to the 20-mile geographic region and the people within it." The court also stated

> . . . after a year and the problems we have had with COVID -- I don't feel comfortable with this global injunction that's open to debate. I want to be more clear.
>      So I'm just going to narrow it down to a geographic area.

Order Granting Wilcox's Motion to Modify the TI

On April 7, 2021, the trial court signed an order granting Wilcox's motion to modify the TI, provided it would remain in effect until the trial on the merits, and a trial date was set for August 30, 2021 ("the April Order"). The order enjoined Wilcox (1) from engaging in any business in competition with STVC within a twenty-mile radius of STVC including working for a competitive practice, a facility that provides services similar to what Wilcox had provided for STVC, and a practice that provides services similar to STVC; and (2) from soliciting, diverting, or diverting away clients, referrals, or business of STVC within a twenty-mile radius of STVC. STVC requested findings of fact and conclusions of law, none were issued, and STVC did not file a notice of past due findings. STVC filed a notice of interlocutory appeal from the April Order.

STVC's Motion to Reconsider

In June 2021, STVC filed a motion to reconsider the April Order granting Wilcox's motion to modify the TI. STVC argued that the April Order was void

10

because it did not state a reason for its issuance or "why the identified probable injury is an irreparable one for which [Wilcox] has no legal remedy." STVC also argued that the April Order was void because it did not fix an amount for bond or state that the bond already posted was sufficient. In addition, STVC argued that Wilcox had not shown or presented evidence that changed circumstances required a modification of the TI.

Wilcox responded and argued that the trial court did not abuse its discretion in modifying the TI considering the changed circumstances, including "the unanticipated passage of time between entering the original TI and the upcoming trial and the unintended consequences as a result of the original TI[.]" Wilcox also argued that STVC had not demonstrated a probable right to relief and that STVC had not presented new evidence of changed circumstances or fundamental error warranting reconsideration.

In July 2021, the trial court signed another modification which was styled as "Order Modifying April 7, 2021 Amendment to Temporary Injunction" ("the July Order"). The July Order stated that the court had concluded that circumstances had changed since the original TI was ordered in May 2020, and the court considered:

> (1) the impact of the COVID-19 pandemic on the July 6, 2020 trial date originally set by this Court, which was less than two months from the date the May 2020 TI was entered, as well as the fact the parties were unable to obtain a new trial date until August 30, 2021; (2) the Court's original analysis regarding the prerequisites for injunctive relief and evidence presented by the Parties regarding those elements, relative to

11

the effect the passage of time has had on STVC's grounds for obtaining the May 2020 TI—specifically the alleged loss of good will, damage to reputation, and confusion, all of which are naturally mitigated through the passage of time between Dr. Wilcox's departure from his employment with STVC; and (3) the Court's recognition that its original intent regarding the scope of a non-solicitation restriction was not realized through the manner in which the May 2020 TI was drafted, as a result of ambiguity and vagueness caused by "Exhibit A" to the May 2020 TI.

Like the April Order, the July Order also enjoined Wilcox. In the July Order, Wilcox was enjoined (1) from engaging in any business in competition with STVC within a twenty-mile radius of STVC including working for a competitive practice, a facility that provides services similar to what Wilcox had provided for STVC, and a practice that provides services similar to STVC; and (2) from soliciting, diverting, or diverting away clients, referrals, or business of STVC within a twenty-mile radius of STVC. The July Order also stated that it did not prevent Wilcox from providing bona fide emergency veterinary services outside the restricted area or to patients owned by him or his family. The July Order set a trial date of August 30, 2021, and it stated "STVC has already posted a bond in the amount of $500, and the Court finds that no additional bond is required." The appellate record does not reflect that either party requested findings of fact and conclusions of law pertaining to the July Order.

Issues

STVC raises three issues on appeal pertaining to the April Order. First, STVC argues on appeal that the trial court had no authority to modify the TI where there was no evidence of a change in circumstance or fundamental error. Second, STVC argues that Wilcox produced no evidence to support the trial court's imposition of a new twenty-mile radius restriction on Wilcox's ability to solicit and work for STVC's referral sources. Third, STVC argues that the April Order is void because it did not fix an amount for bond or state that the bond already posted was sufficient.

Applicable Law and Analysis

We first address our jurisdiction over this matter. Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). However, interlocutory orders may be appealed if authorized by statute. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000); *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Section 51.014 of the Civil Practice and Remedies Code authorizes certain interlocutory appeals and provides, in part, that a party may appeal from an interlocutory order of a district court that grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). Because an order that modifies a temporary injunction is the equivalent of an order that dissolves a temporary injunction and

13

grants a new one, section 51.014 grants an appellate court "jurisdiction to review an order modifying a temporary injunction by interlocutory appeal." *Ahmed*, 99 S.W.3d at 689 (citations omitted); *see also generally DSTJ, L.L.P. v. M & M Res., Inc.*, No. 09-07-559-CV, 2008 Tex. App. LEXIS 1793 (Tex. App.—Beaumont Mar. 13, 2008, pet. denied.) (mem. op.) (in an accelerated interlocutory appeal of an order modifying a temporary injunction, finding no abuse of discretion and affirming the trial court's order, without jurisdictional analysis).

Trial courts retain jurisdiction while accelerated appeals are pending, and under Texas Rule of Appellate Procedure 29.5, "[w]hile an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and unless prohibited by statute may make further orders, including one dissolving the order complained of on appeal." Tex. R. App. P. 29.5. In addition, Rule 29.6 states:

> [w]hile an appeal from an interlocutory order is pending, on a party's motion or on the appellate court's own initiative, the appellate court may review the following:
> (1) a further appealable interlocutory order concerning the same subject matter; and
> (2) any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal.

*See* Tex. R. App. P. 29.6(a); *Bitgood v. Harkness*, No. 09-21-00076-CV, 2022 Tex. App. LEXIS 2562, at *11 (Tex. App.—Beaumont Apr. 21, 2022, no pet.) (mem. op.). In this case, the trial court signed the July Order after STVC filed its notice of

14

interlocutory appeal of the April Order and after STVC had filed its appellate brief.

Under Texas Rule of Appellate Procedure 27.3,

> [a]fter an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appellate court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment. . . .

Tex. R. App. P. 27.3. Therefore, we treat this appeal as an appeal of the July Order, and we consider the briefing as relating to the July Order. *See id.*; *Flamingo Permian Oil & Gas, L.L.C. v. Star Expl., L.L.C.*, 569 S.W.3d 329, 332 (Tex. App.—El Paso 2019, no pet.) (citing *Tex. Health & Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 625 (Tex. App.—Austin 2013, no pet.)).[5] STVC concedes this point in its Reply brief.

Where the complained-of defects of an initial order are remedied in the issuance of a subsequent order, the initial complaints become moot. *See Beggs v. Clark, Love, & Hutson, PLLC*, Nos. 13-19-00466-CV & 13-19-00454-CV, 2020 Tex. App. LEXIS 9952, at *17 (Tex. App.—Corpus Christi-Edinburg Dec. 17, 2020, pet. denied) (mem. op.). In this case, the July Order itemized three things that the

---

[5] In its appellate brief, STVC concedes that the April Order "implicitly supersedes" the earlier TI, citing *Ventling v. Johnson*, 466 S.W.3d 143, 152 n.12 (Tex. 2015) ("When the trial court signs an amended order, the original order becomes 'a nullity.'") and *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 687-88 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

trial court stated showed a change in circumstances since issuance of the original TI, and in the July Order the trial court stated in part "STVC has already posted a bond in the amount of $500, and the Court finds that no additional bond is required." We conclude that STVC's first and third issues on appeal are moot because the July Order specifically states there had been a change in circumstances that supported the need for the modification, and the July Order also states that the amount of bond already posted was sufficient. *See id.* We dismiss these issues as moot.

Next, we examine Appellant's second issue: whether the trial court abused its discretion in setting a twenty-mile, non-solicitation restriction. In a temporary injunction hearing, the trial court examines, in part, whether the party seeking temporary injunctive relief is entitled to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain temporary injunctive relief, "the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* An order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained[.]" Tex. R. Civ. P. 683.

16

In this case, the parties do not dispute whether entry of the original TI was proper; instead, the Appellants challenge whether the trial court abused its discretion by modifying the original TI. In reviewing the trial court's ruling on a request for injunctive relief, the merits of the underlying case are not presented for appellate review, and our review is "strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order." *See Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). Similarly, we also review a trial court's decision to modify a temporary injunction under an abuse of discretion standard. *Butnaru*, 84 S.W.3d at 211; *Beggs*, 2020 Tex. App. LEXIS 9952, at **15-16 (reviewing a modified TI); *DSTJ, L.L.P.*, 2008 Tex. App. LEXIS 1793, at *2 (reviewing a modified TI). In reviewing the evidence from a temporary injunction hearing, and when a trial court has not been requested to enter findings of fact or conclusions of law, we view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *See Crosstex NGL Pipeline, L.P. v. Reins Rd. Farms-1, Ltd.*, 404 S.W.3d 754, 757 (Tex. App.—Beaumont 2013, no pet.) (citing *Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 352 (Tex. App.—Beaumont 2009, no pet.)). The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion or was outside the zone of reasonable disagreement. *City of Keller v. Wilson*, 168 S.W.3d 802, 822

(Tex. 2005); *Butnaru*, 84 S.W.3d at 204 (citing *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985); *Davis*, 571 S.W.2d at 861-62).

A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *See Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). It is not an abuse of discretion "if some evidence reasonably supports the trial court's decision." *Butnaru*, 84 S.W.3d at 211.

A trial court has discretion to modify or dissolve a temporary injunction "to show changed circumstances, changes in the law, or fundamental error that requires modification or dissolution of the injunction." *See In re Estate of Cobb*, No. 09-13-00348-CV, 2013 Tex. App. LEXIS 15306, at *4 (Tex. App.—Beaumont Dec. 19, 2013, no pet.) (mem. op.); *see also Bennett v. Pol,* No. 09-15-00232-CV, 2016 Tex. App. LEXIS 5343, at **8-9 (Tex. App.—Beaumont May 19, 2016, no pet.) (mem. op.); *Universal Health Servs., Inc.*, 24 S.W.3d at 580. "Changed circumstances may include an agreement of the parties, newly revealed facts, or a change in the law that makes the temporary injunction unnecessary or improper." *Sewell v. Hardriders, Inc.*, No. 14-12-00541-CV, 2013 Tex. App. LEXIS 7864, at *5 (Tex. App.—Houston [14th Dist.] June 27, 2013, no pet.) (mem. op.); *see also Cobb*, 2013 Tex. App. LEXIS 15306, at *4. The sole question before the trial court is whether the

18

evolving conditions had altered the status quo after the temporary injunction was granted or had made the temporary injunction unnecessary or improper. *See Cobb*, 2013 Tex. App. LEXIS 15306, at \*\*4-5.

The trial court's July Order stated it considered "that circumstances relating to this matter have changed since the time the Court entered the May 2020 TI such that a modification of the May 2020 TI was warranted." The court further stated that the changed circumstances included, "but were not necessarily limited to[,]" the impact of COVID-19 and inability to set a new trial date until August 2021, the effect of the passage of time on mitigating alleged loss or harm to STVC, and the trial court's original intent concerning the scope of the non-solicitation restriction "was not realized" and resulted in ambiguity and vagueness. It is a matter of public record that the Supreme Court of Texas issued Emergency Orders applicable to judicial proceedings "in response to the imminent threat of the COVID-19 pandemic." *See generally Thirty-Eighth Emergency Order Regarding The Covid-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021) (the emergency order in effect at the time of the July Order). At the hearing pertaining to the modification of the TI, Wilcox noted the ambiguities in the earlier TI regarding the referrals and list of clients that only STVC had access to and argued that Wilcox was scared to work anywhere, and he was working for a clinic in Arkansas that he had vetted as never having had contact with STVC. STVC argued that the March 2020 email referred to

19

in the April TI included some, but not all, of the referral sources STVC bought from Wilcox. Dr. Hanson's deposition transcript was attached to Wilcox's motion to modify, and in his deposition, Dr. Hanson indicated he believed his competition was "[e]very single veterinary clinic in Texas[]" and "every vet clinic in the nation[,]" and he stated a referral source was not a potential client if they were "more than a day's drive" from STVC. The trial court stated on the record that it was never the court's intention for Dr. Wilcox to drive out of state to work, that "things have changed[,]" and STVC had had a year to mitigate alleged harm.

Considering the entire appellate record and viewing the evidence that was before the trial court in the light most favorable to the challenged order, we cannot say the trial court abused its discretion in modifying the TI as outlined in the July Order. The trial court had "some evidence" from which the trial court could have reasonably concluded that changed circumstances warranted the modification. *See Butnaru*, 84 S.W.3d at 211; *Argyle Indep. Sch. Dist.*, 234 S.W.3d at 237. We also cannot say it was an abuse of discretion for the trial court to modify the TI to clarify it is limited to a twenty-mile radius. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011) (citing Tex. Bus. & Com. Code Ann. § 15.50(a)) (a noncompete agreement must be reasonable in time, geographic area, and scope of activity); *see also Cobb*, 2013 Tex. App. LEXIS 15306, at *4. We overrule the second issue.

20

We dismiss as moot STVC's first and third issues on appeal, and we overrule the second issue and affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 23, 2022
Opinion Delivered August 11, 2022

Before Kreger, Horton and Johnson, JJ.