# IN THE SUPREME COURT OF TEXAS

═══════════
No. 17-0052
═══════════

LAURA PRESSLEY, PETITIONER,

v.

GREGORIO (GREG) CASAR, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════

*~ consolidated with ~*

═══════════
No. 17-0278
═══════════

DAVID ROGERS, PETITIONER,

v.

GREGORIO (GREG) CASAR, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════

**PER CURIAM**

This appeal is from a summary judgment in an election contest for a city council seat. The

summary judgment declares the contestee (the candidate who received the most votes) the winner

of the election and sanctions the contestor (the losing candidate) and her attorney for bringing several frivolous claims. We must decide whether the sanctions awarded here were an abuse of discretion and whether the completion of the contested office's term during this appeal renders the appeal of the underlying election contest moot. We conclude that the appeal is moot to the extent it challenges the election results but that the award of sanctions was an abuse of discretion. Without hearing oral argument, we reverse the court of appeals' judgment affirming the sanctions award, vacate that award, and dismiss the appeal of the election contest as moot. TEX. R. APP. P. 59.1.

Gregorio Casar and Laura Pressley finished first and second, respectively, in the 2014 Austin City Council general election for the District 4 council seat. After Casar won the runoff election, Pressley petitioned the Texas Secretary of State for a manual recount. Of the 4,417 ballots cast, 3,937 were cast on the Hart Intercivic eSlate System, an electronic voting system certified by the Secretary. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 4-6 (Tex. 2011) (explaining Secretary of State's certification procedure under Chapter 122 of the Election Code). The Hart eSlate System is a paperless direct recording electronic machine (DRE), which as the name implies directly stores the individual votes and vote totals electronically within the machine. *Id*. A voter using the eSlate makes his or her choice in each race on the ballot and those choices are then presented on a summary screen before the vote is cast. *Id*. at 6. The voter casts his or her ballot by pressing a button, and the eSlate stores an individual "cast vote record" (CVR), reflecting the individual's votes in each race as they appeared on the summary screen. *Id*.

For the manual recount, the CVR for each voter was printed and counted by hand. Pressley and her chosen poll watchers witnessed the printing of the CVRs and the manual recount. The

2

manual recount found no discrepancies with the original canvass and confirmed the original results: Casar won by 1,291 votes.

Pressley next filed an election contest, arguing that CVRs are not "ballot images" or "images of ballots cast," as the Election Code requires. TEX. ELEC. CODE § 128.001(a)(2). She also asserted that election officials committed criminal violation by preventing poll watchers from observing the retrieval, sorting, and copying of CVRs, and that the election results were unknowable because of voter disenfranchisement from the consolidation of voting locations and numerous election irregularities. These alleged irregularities included: failure to print zero or tally tapes (tapes used to verify that election machines have zero votes when the election starts and what the vote count is at the end); broken seals on election machines; tally machines left open for extended periods of time; statistical anomalies; invalid or corrupt mobile ballot boxes (memory cards with votes from polling locations that are inserted into Travis County's tabulation computer for calculating vote totals); and election officials preventing poll watchers from observing certain recount activities. After substantial discovery, Casar filed traditional and no-evidence summary judgment motions and moved for Chapter 10 sanctions against Pressley and her attorney, David Rogers, for pleadings that lacked legal or factual support. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001–.006.

The trial court granted Casar's no-evidence summary judgment motion and, after a hearing, awarded sanctions against Pressley and Rogers—$40,000 against Pressley; $50,000 against Rogers; and $7,794.44 against Pressley and Rogers for Casar's expenses. The trial court held that several of Pressley's claims—voter disenfranchisement, election irregularities, and criminal violations by election officials—had no legal or factual basis. Additionally, the trial court awarded contingent

3

appellate fees against both Pressley and Rogers in the event of an unsuccessful appeal. Pressley and Rogers each appealed.

In the court of appeals, Pressley argued that the trial court erred by granting the summary judgment motion and by awarding sanctions. She claimed, among other things, that CVRs do not comply with the Texas Constitution's ticket-numbering requirement or the Election Code's ballot requirements. *See* TEX. CONST. art. VI, § 4 (requiring that "the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets"). Regarding the sanctions, Pressley and Rogers argued that the trial court abused its discretion in finding their conduct sanctionable and in finding a direct nexus between the sanction and the allegedly sanctionable conduct. They also claimed that the sanctions were excessive.

The court of appeals affirmed on all issues. ___S.W.3d ___ (Tex. App.—Austin 2016). It held that the trial court did not abuse its discretion or impose excessive sanctions, that the Secretary of State had the discretion to "adopt the use of CVRs as ballot images," and that this use did not violate the Constitution. *Id.* at ___. Pressley and Rogers appealed again, with Pressley complaining about the election and sanctions and with Rogers limiting his complaints to the sanctions awarded against him.

Meanwhile, Casar was reelected and began his second term in office on January 6, 2017. Because Pressley's petition for review in this Court was filed after the completion of Casar's contested term, the first issue we must decide is whether the election contest is now moot. Pressley argues that it is not because her case meets one of the exceptions to the mootness doctrine: capable of repetition yet evading review. *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571

(Tex. 1990). She argues that holding her case to be moot would make raising important constitutional and statutory election issues nearly impossible in races like her own where the election cycle is only two years.

Casar responds that this election contest is moot because no remedy exists to contest an expired term of office. He further argues that Pressley's asserted capable-of-repetition exception to mootness does not apply because there is no evidence of the exception's two requirements: (1) that the challenged action was too short to be fully litigated before the action ceased or expired and (2) that a reasonable expectation exists that Pressley will be subjected to the same action again. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

We agree that the election contest is moot now that the term in question has expired and no exception to the mootness doctrine applies. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id*. Pressley asserts that the capable-of-repetition-yet-evading-review exception applies yet has failed to show either that she could not have litigated her election contest before the two-year term expired or that she has a reasonable expectation that she will be subjected to the same action again. *See Williams*, 52 S.W.3d at 184. Indeed, in this Court alone Pressley filed eight motions of extension of time and took over a year to file all her briefing. A similar lack of urgency is reflected in the court of appeals. Election contests are time-sensitive, but Pressley still must demonstrate that she could not fully litigate the case within the given term of office. She has not done that here.

5

Even though the election contest is moot, we must still decide whether the trial court abused its discretion when sanctioning Pressley and her attorney for bringing frivolous claims. Pressley argues that Casar did not overcome the presumption that her allegations were made in good faith. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Pressley submits that she provided ample evidentiary support for her allegations, which should have survived Casar's summary judgment motions, let alone his sanctions motion. Her evidence included: an expert report, poll watcher affidavits, the Travis County Clerk's deposition, incomplete zero tapes, audit logs of the tally computer, the tally manual, and a Judge Booth Controller envelope with instructions not to print tally/results tapes. Pressley concludes that, in light of this evidence, the trial court abused its discretion in awarding sanctions.

Rogers argues that the sanctions against him were improper for several additional reasons. First, he asserts that he was not the attorney-in-charge during Pressley's fifth and sixth amended pleadings—the pleadings that are the basis of the sanctions here—and, therefore, was not responsible for the claims asserted therein. Second, he argues that the trial court's final judgment contained a Mother Hubbard clause that resolved all issues between the parties and was final and appealable. Rogers submits that this was done on the record in open court and, hence, constitutes a Rule 11 agreement that foreclosed the subsequent sanctions. *See* TEX. R. CIV. P. 11. Third, he complains about the conditional appellate sanctions awarded here because Casar offered no evidence to support them. Chapter 10 states that sanctions are only for amounts "incurred," not amounts that might speculatively be incurred later. *See* TEX. CIV. PRAC. & REM. CODE 10.004(c)(3). Moreover,

Rogers submits that Casar's sworn campaign finance reports subsequently submitted to the City of Austin demonstrate that he did not actually incur the amounts awarded here.

Casar responds that Pressley's claims were based on suspicion, speculation, and surmise about electronic voting and government officials. He notes that the Secretary of State's Director of Elections twice rejected Pressley's allegations and explained that the recount was properly performed. Moreover, the Secretary of State rejected Pressley's interpretation of what her poll watchers could observe and told Pressley that no crime had occurred. Casar concludes that sanctions were necessary here to deter repetition of these types of claims, which could be filed in every election. As to Rogers, Casar submits that his attorney-in-charge argument was not raised in the trial court and was therefore waived, that the Mother Hubbard clause was not a Rule 11 agreement, and that regardless of this clause, the trial court retained plenary power to modify its judgment for thirty days and did so here. *See* TEX. R. CIV. P. 329b(d), (e).

Chapter 10 of the Civil Practice and Remedies Code permits sanctions for pleadings that are filed for an improper purpose or that lack legal or factual support. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 362 (Tex. 2014). Pleaded claims must be warranted by existing law or a non-frivolous argument to change existing law. TEX. CIV. PRAC. & REM. CODE § 10.001(2). Each factual contention must have or be likely to receive evidentiary support after a reasonable opportunity for discovery. *Id.* § 10.001(3). Chapter 10 sanction awards are reviewed for an abuse of discretion. *Low*, 221 S.W.3d at 614. A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). But a trial court "has no 'discretion' in

7

determining what the law is or applying" law to facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, the trial court abused its discretion here if it awarded sanctions for baseless pleadings if those pleadings, in fact, have at least some legal or factual basis.

Pressley contends that the results of the contested election were unknowable because of several irregularities and statutory and constitutional violations. The trial court sanctioned Pressley and Rogers for three claims in which they alleged: (1) election irregularities, (2) criminal violation by election officials, and (3) voter disenfranchisement. We consider each in turn.

The claimed election irregularities included statistical anomalies; invalid/corrupt mobile ballot boxes; broken seals on the election machines; tally computers that were left open; the failure to print zero or tally tapes; and poll watchers being prevented from observing the retrieval, sorting, and copying of CVRs. Pressley's statistical-anomalies claim does not demonstrate that the election outcome here was incorrect or unknowable, but no one disputes that her analysis was based on actual data. There is nothing frivolous about presenting a statistical analysis showing that the results here were unlikely as persuasive support for her other claims. The claim had a factual basis and, hence, the trial court abused its discretion in sanctioning Pressley for it.

For Pressley's invalid/corrupt mobile ballot box claim, she had a computer-science and data expert who testified that he found at least nine corruption errors when Travis County downloaded the CVRs from the polling locations. According to the expert, these corrupted memory cards (which apparently are inserted into Travis County's tabulation computer for downloading) "could damage the credibility of the vote counting process." This is some evidence to support her allegation. Casar responds that this testimony is not admissible evidence. But even if Casar is right, that is not the

8

Chapter 10 standard. Pressley needs only to have some factual basis for her claim to avoid Chapter 10 sanctions, not evidence that is ultimately admissible. She has some evidence here. The trial court, therefore, abused its discretion in sanctioning Pressley for this claim.

Pressley also claims that seals on the election machines were broken and that the tally computers were left open for extended periods of time, both of which brought the security and accuracy of the vote count into question. This, according to Pressley, is part of the reason that the true outcome of the election is unknowable. As the court of appeals points out, Pressley did not present evidence that anyone accessed the tally computer or election machines or caused any votes to be illegally counted or not. ___ S.W.3d at ___. But that, again, is not the Chapter 10 standard. Pressley had evidence for these claims. Casar does not dispute that the seals were broken; he just argues that the seals were broken in the normal course of the election and were handled properly; Pressley argued that the Tally Audit Log showed that the tabulation computer was left open. The Travis County Clerk disagreed that the Tally Audit Log showed this, but the Clerk's opinion is not dispositive and does not even explain why Pressley is wrong. As the court of appeals also noted, the Clerk "did not know if the audit log was correct as to those entries" and "was uncertain of what the coding on the audit log meant." *Id.* How the Clerk's uncertain opinion makes Pressley's claim wrong, let alone frivolous, is unclear. Regardless, Pressley did not need to be right or produce enough evidence to prevail on her entire suit to avoid sanctions. These claims have some evidentiary support and that is enough to make them non-frivolous. Thus, the trial court abused its discretion in sanctioning Pressley for these claims.

9

Next, the trial court sanctioned Pressley for alleging that the County failed to print zero or tally tapes on election day. Her allegation is based on her assertion that the Election Code requires that full zero and tally tapes be printed on election day and, hence, the abbreviated tapes that the County printed on election day are not "zero" or "tally" tapes per the Election Code. Pressley produces other evidence to support her allegation that no such tapes were printed, but this argument alone is enough to avoid sanctions. This is a dispute about what constitutes zero and tally tapes under the Election Code. Pressley claims that only full tapes are "tapes" under the Code. She may be wrong, but her argument that abbreviated tapes do not meet the Election Code's requirements and, hence, that no tapes were printed on election day is not frivolous. Rather, this is a dispute about whether abbreviated tapes are tapes at all under the Election Code. Thus, the trial court abused its discretion in holding that this claim had no legal basis.

Lastly, Pressley argues that her poll watchers were prevented from observing the retrieval, sorting, and copying of CVRs. She claims that under sections 33.056 and 213.013 of the Election Code, her poll watchers should have been allowed to view those activities. TEX. ELEC. CODE §§ 33.056(a), 213.013(h). Section 213.013(h) states that "[e]ach person entitled to be present at a recount is entitled to observe any activity conducted in connection with the recount." *Id.* § 213.013(h). Given that the retrieval, sorting, and copying of CVRs are arguably "activit[ies] conducted in connection with the recount," Pressley's legal claim is plausible. The mere fact that the Secretary of State disagreed with Pressley's interpretation of the Election Code does not make Pressley's claim here frivolous. It begs the question to assume that Pressley's legal argument is baseless because the Secretary of State disagrees when whether the Secretary of State's

10

interpretation is correct is exactly what she is disputing. Pressley's poll watchers were not allowed to observe certain activities that were arguably "in connection with the recount." *Id*. This claim might be a losing one, but it is not frivolous. Thus, the trial court abused its discretion in holding that this claim had no legal or factual basis.

The trial court also sanctioned Pressley for alleging that election officials committed criminal violations by preventing her poll watchers from observing the retrieval, sorting, and copying of CVRs. Section 33.061 of the Election Code provides that an official who knowingly prevents a watcher from observing an activity that the watcher is entitled to observe commits a Class A misdemeanor. *Id*. § 33.061. This claim, therefore, rises and falls on whether her poll watchers were entitled to observe those activities. Because that claim, described above, is not frivolous, neither is her assertion that preventing her poll watchers from observing those activities was a criminal violation. Thus, the trial court abused its discretion in holding that this claim lacked any legal or factual basis.

Finally, the trial court sanctioned Pressley for making claims of voter disenfranchisement. Through her first five pleadings, she alleged illegal voter disenfranchisement in the runoff election based on voting-location consolidation. She claimed that over 1,000 voters were potentially disenfranchised, which she calculated by counting voters who historically had voted but did not vote in her election.

Pressley claimed that fewer voters participated in the runoff election than was the historic norm; she then based her disenfranchisement claim on that difference in voters. She is probably wrong about the cause of this drop-off, but her calculated difference is *some* evidence to support her

claim, and it gave her reason to think that her claim might receive evidentiary support after discovery. *See* TEX. CIV. PRAC. & REM. CODE § 10.001(3). Pressley, however, dropped the claim from her sixth pleading, which was the first pleading she filed after receiving discovery from the County. In other words, Pressley realized after discovery that despite her calculated voter drop-off, insufficient evidence existed to support her disenfranchisement claim. That she could not name a single disenfranchised voter at the time of her initial pleadings does not make those pleadings frivolous. Because Pressley had at least some reason to think that discovery might reveal evidence to support her claim and because she dropped the claim after discovery revealed that not to be the case, the trial court abused its discretion in sanctioning Pressley and Rogers for exploring the disenfranchisement claim.

Pressley's claims individually and collectively might have been losing ones, but they were not frivolous. The election activities that Pressley complains about could create a perception of impropriety, and such impropriety might make the election results unknowable, which is precisely her argument. Her evidence might not have been strong enough to win on the merits, but she had at least some evidence and legal basis for her claims. For that reason, the trial court abused its discretion in sanctioning Pressley and Rogers for making these non-frivolous arguments, and the court of appeals erred in affirming the sanctions.

Without hearing oral argument, we reverse that part of the court of appeals' judgment affirming the award of sanctions against Pressley and Rogers, render judgment vacating that award, and dismiss the appeal of the election contest as moot. TEX. R. APP. P. 59.1.

Opinion Delivered: January 25, 2019

12