

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-22-00324-CV

**IN RE COMMITMENT OF** Joaquin **RIVERA**

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-13023
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
              Beth Watkins, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: August 2, 2023

AFFIRMED

A jury found appellant, Joaquin Rivera, to be a sexually violent predator in a civil commitment action brought under Texas Health and Safety Code Chapter 841. The trial court adjudged him as a sexually violent predator, and civilly committed him for sex-offender treatment and supervision. In two issues on appeal, Rivera asserts the trial court erred by (1) denying him the right to ask a proper commitment question regarding victims younger than fifteen and (2) denying a mistrial after the State violated a motion in limine during opening arguments. We affirm.

## BACKGROUND

Prior to the commitment trial, Rivera had been convicted and sentenced as follows: in 1999 for indecency with a child, in 2008 for violating annual Sex Offender Registration, and in 2012 for aggravated sexual assault of a child. The State later filed a petition, alleging Rivera was a sexually

violent predator and requesting that he be committed for treatment and supervision. The trial court conducted a trial before a jury at which Rivera and the State's forensic psychologist, Jason Dunham, Ph.D., testified. The jury found Rivera to be a sexually violent predator and the trial court signed an Order of Commitment.

## CIVIL COMMITMENT OF SEXUALLY VIOLENT PREDATORS

"A person is a sexually violent predator for the purposes of [Texas Health and Safety Code Chapter 841] if the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE § 841.003(a). The State must prove beyond a reasonable doubt that a person is a sexually violent predator. *Id.* § 841.062(a). "Behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## COMMITMENT QUESTION

Rivera began his voir dire by asking jurors if they could listen to the facts and follow the court's instructions if evidence was presented about child victims. Rivera's attorney heard from several members of the venire in response to the following question, to which the State did not object:

> If you hear that there's evidence of child victims, will that be so weighty on you that you are not going to be able to listen to the facts and follow the instructions? And does anybody have any responses or comments to that?

When one venireperson asked, "When you say 'child victims,' like how old are you talking about? Like under 18 or . . .?," the following conversation occurred with defense counsel:

> Counsel: Well, let's talk about it this way. I can't go into facts of the case obviously, right? But let's – is there an age – is there an age that makes a difference?
> Venireperson: To me it does, yeah.

Counsel: Okay. Do you have an age range that you think is more important?
Venireperson: Yes. I would say like any children that are like under 15 is a difference between a child that's 16 or older, just from my own experiences. I would say so, yeah, kind of hard to answer that question when you're not like putting into terms of how young the child is.
Counsel: If you hear that there's a psychologist that makes a diagnosis of a pedophilic disorder. And someone asked what a pedophilic disorder is. That's a sexual attraction to prepubescent children. So if you hear that there's a diagnosis of pedophilic disorder, is that something that you're not going to be able to get through in order to sit on this jury?
Venireperson: Like do – what do you mean by prepubescent?
Counsel: Scientifically, it would be the development of secondary sex characteristics.
Venireperson: Okay. So, yeah, that I wouldn't be able to get past. Because that's like a younger age. If it was an infant or someone who's five years old, that's different than 16 or older.
Counsel: Okay. So if you – if you hear evidence about a child victim and evidence about pedophilic disorder, are you automatically going to turn off and say enough is enough, that diagnosis alone by a psychologist, the person has a behavioral abnormality; the person is a sexual violent predator?
Venireperson: When it comes to terms with yes or no, no. I'm not going to turn off everything, no.
Counsel: Okay. Is it going to affect your ability to listen to the facts?
Venireperson: Yes.
Counsel: And how so?
Venireperson: Just like you said, like age difference. Like, if they were facts they're – you know, older than a certain age or something like that, that would determine my answer.
*Counsel: Okay. So would you – if you hear the facts come off that stand of child victims younger than 15, is that going to affect your ability to move forward and listen to the rest of the facts in the case and answer the question beyond a reasonable doubt whether or not this person is a sexually violent predator?*
*Prosecutor: Your Honor, I'm going to object to the commitment question.*
*The court: Sustained.*
*Counsel: Your Honor, that's a proper commitment question.*
*The court: Sustained.*

On appeal, Rivera argues the trial court reversibly erred when it denied him the right to ask the above emphasized question.

## A.     The Law Relevant to Venire Questions

Either side may challenge a juror for cause when it can show that the juror is incapable or unfit to serve on the jury.  TEX. CODE CRIM. PROC. art. 35.16(a).  A juror may be challenged for

cause if either side can show "[t]hat the juror has a bias or prejudice in favor of or against the defendant." *Id.* art. 35.16(a)(9). "Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (per curiam). This right is limited "by reasonable trial court control." *Id.* at 228-29 (citation omitted); *Allridge v. State*, 850 S.W.2d 471, 479 (Tex. Crim. App. 1991) ("[A] trial court has wide discretion in controlling the voir dire examination."). Thus, we review a trial court's refusal to allow lines of questioning during voir dire for an abuse of discretion. *Hill*, 334 S.W.3d at 229. "However, the proper discretion inquiry turns on the propriety of the question: 'a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.'" *Id.* (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)).

"Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). The *Standefer* Court articulated a three-part test for determining whether a voir dire question is an improper commitment question. *Id.* at 179-84. First, the trial court must determine whether a particular question is in fact a commitment question. *See id.* at 179. Second, if it is a commitment question, then the court must decide whether it is nevertheless a proper commitment question. *See id.* at 181. To determine whether the question is a proper commitment question, the court first inquires whether one of the possible answers to the question gives rise to a valid challenge for cause. *Id.* at 182. If it does not, then the question is not proper and should be disallowed by the trial court. *See id.* Third, if the commitment question gives rise to a valid challenge for cause, then the court must determine whether the question

contains only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.* at 182.

## B.     Analysis

The parties agree the question was a commitment question. However, Rivera asserts the question was proper because he sought to determine whether the venireperson was so biased against him if the victims were younger than fifteen years of age that they would find a behavioral abnormality from this fact alone and would not listen to evidence beyond this singular fact. Rivera contends his question gave rise to a valid challenge for cause; thus, the question was proper. The State counters that the question was an improper commitment question because it invited the jurors to resolve the issue a certain way after learning a particular fact—the age of the child. We will assume without deciding that the trial court erred by sustaining the State's objection to a proper commitment question because we conclude any error was harmless.[1]

"A trial court's improper exclusion of a proper question during jury voir dire is subject to a harmless error analysis." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Standards for reversible error in criminal cases depend on whether the error is constitutional or non-constitutional. *See* TEX. R. APP. P. 44.2. If we determine a trial court erred by improperly limiting a defendant's voir dire, we generally consider it a non-constitutional error and conduct the harm analysis under Rule of Appellate Procedure 44.2(b). *See Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014). Under Rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich*, 160 S.W.3d

---

[1] Rivera's brief on appeal does not address whether or how he was harmed. Nevertheless, the burden to demonstrate harm does not rest on Rivera or the State; it is our responsibility as an appellate court to review the record and assess harm. *See Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001).

at 577 (citation omitted). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (citation omitted).

The *Rich* Court set forth general factors that are "relevant considerations in determining the harm from being denied a proper question to the venire," including (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the State's theory and any defensive theories; (5) closing arguments; (6) voir dire; and (7) whether the State emphasized the error. 160 S.W.3d at 577-78. We turn to these factors.

## A. The Evidence

The testimony admitted for the jury's consideration included testimony from the State's forensic psychologist and from Rivera. Dr. Jason Dunham testified he reviewed records of Rivera's past criminal offenses including unadjudicated offenses and allegations, the details of his sexual offenses, his records from prison and parole case summaries, his medical records and sex offender treatment records, deposition transcripts, and recordings of jail telephone conversations. He also interviewed Rivera. Dunham believed Rivera suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. When asked his reasons for this conclusion, Dunham explained:

> Mainly the pattern. He's not a first-time sex offender. So he has already been – he offended. He was incarcerated. He went through treatment. He got out. He offended again. The escalation of the offenses. He's back in prison. He's back in treatment.
>
> I'm reviewing the current – you know, treatment and – you know, meeting and listening to what he has to say. I don't think he's there yet as far as understanding his risk. I think it's – it's about sexual deviancy. There's a combination here of

sexual deviance plus – we'll call it antisocial orientation. Which is sort of a – kind of a criminal mindset. . . .

Dunham stated sexual deviancy and antisocial orientation are the two main risk factors. He explained antisocial orientation as somebody's "criminal mindset based on their history, certain types of rule-breaking behavior." He explained sexual deviance as abnormal sexual behavior that causes "some kind of problem with the person or with another person or with society in general." As evidence of Rivera's sexual deviation, Dunham noted Rivera's sexually offending against children and his two past criminal convictions, one for indecency with an eleven-year-old child by sexual contact and another for aggravated sexual assault of a seven-year-old child. According to Dunham's review of various records, Rivera said he was "trying to educate" his eleven-year-old step-daughter. Dunham found it significant that Rivera minimized how frequently the abuse occurred, he did not recognize he was sexually aroused, he did not believe what he did was wrong, and he thought it was acceptable to have sex with an eleven-year-old. Dunham said that because Rivera is in treatment, he expected some acknowledgement of the pedophilia and sexual arousal around children.

The aggravated sexual assault involved the seven-year-old daughter of his girlfriend. Because this was Rivera's second offense, Dunham considered recidivism to be a significant risk factor. Dunham explained that Rivera is "a recidivist and he has re-offended after incarceration for one sex offense and after having a sex offender education program in prison after the first offense. Offending while he was in a relationship." Dunham testified,

> [a]gain, there's more – there's more coercion [with the second child] – forced violence, slash, coercion by threatening her not to tell. The age is getting younger. The escalation is going up. Because now it's – you know, . . . genital-to-genital contact and then ultimately anal penetration of a 7-year-old. So a pattern of escalation. And just in totality with not being deterred by prison and treatment and all the other kind of sanctions that happened, I guess he . . . lost custody of [his] son after the first – the first conviction. So those things weren't enough to deter him from doing it again.

Dunham stated Rivera said he was trying to educate the seven-year-old girl. Dunham said Rivera's sexual deviance diagnosis was for a pedophilic disorder. He opined that Rivera's arousal to children affected his ability to control his thinking, his desires, and his impulses. Dunham also diagnosed Rivera with alcohol-abuse disorder and cannabis-use disorder. Lastly, Dunham diagnosed Rivera with antisocial personality disorder, which is a lifelong pattern of violating the law and violating societal norms based on the following:

> The history of lawbreaking behavior. Not necessarily being arrested, but starting from an early age. The fighting, bringing a gun to school, expelled from school, drug use from early age, alcohol use from like age 10, trying to hit his mom at an early age, police involvement by age 11, three juvenile charges for burglary of a habitation, continuing – being in juvenile probation; being revoked, I think, a couple of times; placed in a juvenile facility until he was 18.
>
> And as an adult – you know, possession of marijuana and failure to register as a sex offender. He went to prison for that in between his two sex-offense convictions. Failure to appear in court.
>
> So you see all these and then he's been locked up since he was 29 [sic]. So all that happened – aside – all that happened by the time he was 29 years, like all of those charges. That's pretty pervasive. It's criminal versatility too. It's not just one type of crime. It's not just sex offending, but there's drug – there's drug stuff. There's . . . burgling. There's violence with the sexual assaults.
>
> So it's . . . chronic. Like I found – and it started early. It started – to diagnose that condition, you have to have some evidence of a conduct disorder by the age of 15. And I saw in the records stuff happened by the age of 9 or 10 with some substance abuse. Police involvement by age 11. And then in juvenile home since – or detention since age 14. So clearly, by the age of 15, there was a problem.
>
> So diagnose that, you see a pattern of behavior. What appears is that Mr. Rivera does behave a lot better when he's in prison. He's been in prison three times.
>
> . . .
>
> So he's been in prison three times. In each of the three prison terms he's demonstrated pretty good behavior. Nothing too significant. In fact, no sexual misconduct cases. But each time he gets out, something has happened and he's been brought back. So to me it looks like he's able to behave himself and do well when he has structured supervision. And so that kind [sic] can explain to me why he's [sic] does well when he's confined versus when he has kind of free rein in the community.

Dunham stated Rivera attended a four-month sex offender education program while incarcerated after his first conviction. Dunham thought this was significant because it showed Rivera had classroom education but still re-offended. Dunham said Rivera is currently in the program while incarcerated on the second conviction and he is doing well. Dunham did not believe the sex offender treatment Rivera had received to-date had reduced his risk enough for Dunham to say Rivera did not have a behavioral abnormality. Dunham believed Rivera's risk to sexually re-offend was "high."

Rivera testified his stepdaughter was eleven or twelve years old and he was twenty years old when he assaulted her. In 1999, he was convicted of sexual contact by fondling the girl's breasts.[2] He explained why he touched the girl as follows:

> In my mind at that time, I was thinking – like the Dr. Dunham was saying – I was thinking I was teaching her how – because my ex-wife was eight years older than me during that time. So like I said, it was a common occurrence there in a country town. So it was – it was just something growing up it was norm to me. I didn't see anything wrong with it. So that's – you know, it happened to me. I thought it was all right.

Rivera stated he was abused as a child and, at the time of the abuse of his step-daughter, he did not know it as wrong for an adult to have sexual contact with a child. Rivera was released from prison on the first conviction in 2004 and was arrested on the second charge, assaulting his girlfriend's daughter, in 2008. The girl was seven or eight years old and Rivera was twenty-nine years old at the time. Rivera said he was "giving [the girl] the birds and the bees." Although he had already gone to prison for assaulting the first girl, Rivera claimed he still did not know it was wrong to have sexual contact with the second girl.

---

[2] In February 2000, Rivera was charged with aggravated sexual assault and sexual assault of an adult female who was deaf and mute, but the charges were dismissed.

Rivera stated he was not sexually attracted to children. He admitted he had paid for sex and was a male escort for a short period of time. He said he had his first sexual experience when he was eleven or twelve years old, with his babysitter. He said he did not learn anything during the first sex offender program. He said the current program he now attends is "a lot more impactful," he has learned empathy, he was not at risk to sexually re-offend, he was safe to be around because of the coping tools he had been given, and he no longer believed it was acceptable "to teach a child." He said he is different now because he has matured and he has "gotten the education."

We conclude the evidence supporting the jury's verdict was substantial and, as sole judge of the weight and credibility of the evidence, the jury could reasonably conclude Rivera suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

**B.      The State's Theory and Any Defensive Theories; Closing Arguments**

The State argued Rivera was a repeat sexually violent offender who suffered from a behavioral abnormality. During closing arguments, the State reviewed the evidence and asked the jury to answer "yes" that he was a sexually violent predator. The State did not emphasize anything objectionable. Rivera's defensive theory was that Rivera had changed. During closing arguments, defense counsel discussed the burden of proof, reviewed the evidence, and argued Rivera would not re-offend.

**C.      Voir Dire**

Although Rivera's counsel was unable to ask the single question of a single venireperson, counsel was able to repeatedly discuss, without objection, the issues of pedophilic disorder and child victims. Both sides agreed on the strikes. The one venireperson whom Rivera attempted to question was not seated on the jury.

**D.      Conclusion**

Based on our review of the record, we have "fair assurance that the error [if any] did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365.  Therefore, we overrule Rivera's first issue on appeal.

## MOTION FOR MISTRIAL

After the jury was selected and before the trial commenced, the trial court conducted a hearing on the parties' respective motions in limine.  Rivera had requested that the State be enjoined from "[a]ny mention of any actual or alleged gang involvement on the part of" Rivera.  The trial court did not immediately rule on the request, but reserved its ruling before any mention at trial.[3]  During its opening argument, the State argued as follows:

> He also has this antisocial lifestyle; and that doesn't mean someone's reserved. In this sense, it means that it's rule breaking.  The ability to violate rules that you and I abide by quite easily, he is able to break.  You will learn that at a very young age, Mr. Rivera has been in trouble with the law.  He has, all the way from as a juvenile, convictions of burglary habitation, multiple . . . of those.  You'll also hear that he has involvement in gang activity and so forth.  And it's also just the general rule breaking.  The ability to –

Defense counsel objected and noted his motion in limine.  The State acknowledged it was supposed to approach the bench before mentioning gang activity and apologized.  Defense counsel requested a mistrial.  The trial court denied the motion but instructed the jury as follows:

> Ladies and gentlemen of the jury, I want to remind each of you that opening statements that are made by the [State] and [Rivera] are not evidence.  Evidence will be what you hear from the witness stand and whatever exhibits are admitted. So, again, these are just opening statements what people expect the evidence to show.  Any mention of gang activity or lack thereof, you are to completely disregard.  Does everyone understand?

---

[3] The court later allowed Dunham to "speak about underlying gang activity, but he [was] not to mention the 'gang' at all."

The jurors responded, "yes," and trial resumed. On appeal, Rivera asserts no instruction could cure the bias that resulted from the State's mentioning gang involvement. Rivera contends the State started the trial with an improper, inflammatory, highly prejudicial comment by tying his alleged "gang activity" to his "rule breaking" and "antisocial lifestyle."

"Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Usually, an instruction to disregard the argument will cure any error caused by improper argument. *See, e.g.*, *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). "We will not disturb a ruling denying a motion for mistrial absent a showing of an abuse of discretion." *Bazan v. Munoz*, 444 S.W.3d 110, 123 (Tex. App.—San Antonio 2014, no pet.). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable." *Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019) (per curiam). "When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *In re Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, no pet.).

Here, the trial court promptly instructed the jury to disregard the statement and the jury is presumed to have followed that instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Nothing in the record demonstrates the comment had any harmful effect or that the jury was unable to follow the trial court's instruction. Accordingly, we overrule Rivera's second issue on appeal. *See id.* at 580 (presuming jury disregarded testimony about extraneous offense when trial court gave prompt instruction to do so); *Brock v. State*, 275 S.W.3d 586, 591-

92 (Tex. App.—Amarillo 2008, pet. ref'd) (holding jury presumed to have followed trial court's instruction to disregard deputy sheriff's testimony that defendant confessed).

## CONCLUSION

We affirm the trial court's judgment.

Lori I. Valenzuela, Justice