

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-22-00324-CV

**IN RE COMMITMENT OF** Joaquin **RIVERA**

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-13023
Honorable Stephanie R. Boyd, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Patricia O. Alvarez, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: October 25, 2023

AFFIRMED

A jury found appellant, Joaquin Rivera, to be a sexually violent predator in a civil commitment action. The trial court adjudged him as a sexually violent predator, and civilly committed him for sex-offender treatment and supervision. In two issues on appeal, Rivera asserts the trial court erred by (1) denying him the right to ask a proper commitment question regarding victims younger than fifteen and (2) denying a mistrial after the State violated a motion in limine during opening arguments. On August 2, 2023, we issued an opinion and judgment affirming the trial court's judgment. On August 16, 2023, Rivera filed a motion for rehearing. We deny the motion for rehearing, but we withdraw our August 2, 2023 opinion and judgment, and we substitute this opinion and judgment in its place. We affirm.

**BACKGROUND**

Prior to the commitment trial, Rivera had been convicted and sentenced as follows: in 1999 for indecency with a child, in 2008 for violating annual Sex Offender Registration, and in 2012 for aggravated sexual assault of a child. The State later filed a petition, alleging Rivera was a sexually violent predator and requesting that he be committed for treatment and supervision. The trial court conducted a trial before a jury at which Rivera and the State's forensic psychologist testified. The jury found Rivera to be a sexually violent predator, and the trial court signed an Order of Commitment.

**CIVIL COMMITMENT OF SEXUALLY VIOLENT PREDATORS**

"A person is a sexually violent predator for the purposes of [Texas Health and Safety Code Chapter 841] if the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE § 841.003(a). The State must prove beyond a reasonable doubt that a person is a sexually violent predator. *Id.* § 841.062(a). "Behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

**COMMITMENT QUESTION**

Rivera began his voir dire by asking venirepersons if they could listen to the facts and follow the court's instructions if evidence was presented about child victims. Rivera's attorney heard from several members of the venire in response to the following question, to which the State did not object:

> If you hear that there's evidence of child victims, will that be so weighty on you that you are not going to be able to listen to the facts and follow the instructions? And does anybody have any responses or comments to that?

When one venireperson asked, "When you say 'child victims,' like how old are you talking about? Like under 18 or . . .?," the following conversation occurred with defense counsel:

**Counsel:** Well, let's talk about it this way. I can't go into facts of the case obviously, right? But let's – is there an age – is there an age that makes a difference?

**Venireperson:** To me it does, yeah.

**Counsel:** Okay. Do you have an age range that you think is more important?

**Venireperson:** Yes. I would say like any children that are like under 15 is a difference between a child that's 16 or older, just from my own experiences. I would say so, yeah, kind of hard to answer that question when you're not like putting into terms of how young the child is.

**Counsel:** If you hear that there's a psychologist that makes a diagnosis of a pedophilic disorder. And someone asked what a pedophilic disorder is. That's a sexual attraction to prepubescent children. So if you hear that there's a diagnosis of pedophilic disorder, is that something that you're not going to be able to get through in order to sit on this jury?

**Venireperson:** Like do – what do you mean by prepubescent?

**Counsel:** Scientifically, it would be the development of secondary sex characteristics.

**Venireperson:** Okay. So, yeah, that I wouldn't be able to get past. Because that's like a younger age. If it was an infant or someone who's five years old, that's different than 16 or older.

**Counsel:** Okay. So if you – if you hear evidence about a child victim and evidence about pedophilic disorder, are you automatically going to turn off and say enough is enough, that diagnosis alone by a psychologist, the person has a behavioral abnormality; the person is a sexual violent predator?

**Venireperson:** When it comes to terms with yes or no, no. I'm not going to turn off everything, no.

**Counsel:** Okay. Is it going to affect your ability to listen to the facts?

**Venireperson:** Yes.

**Counsel:** And how so?

**Venireperson:** Just like you said, like age difference. Like, if they were facts they're – you know, older than a certain age or something like that, that would determine my answer.

- 3 -

| | |
|---|---|
| **Counsel:** | *Okay. So would you – if you hear the facts come off that stand of child victims younger than 15, is that going to affect your ability to move forward and listen to the rest of the facts in the case and answer the question beyond a reasonable doubt whether or not this person is a sexually violent predator?* |
| **Prosecutor:** | Your Honor, I'm going to object to the commitment question. |
| **The Court:** | Sustained. |
| **Counsel:** | Your Honor, that's a proper commitment question. |
| **The Court:** | Sustained. |

On appeal, Rivera argues the trial court reversibly erred when it denied him the right to ask the above emphasized question.

### *The Law Relevant to Venire Questions*

"Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (citing *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749–50 (Tex. 2006)). However, this right is constrained by reasonable trial court control. *Id.* at 228–29. Thus, we review a trial court's refusal to allow lines of questioning during voir dire for an abuse of discretion. *Id.* at 229. "[T]he proper discretion inquiry turns on the propriety of the question: 'a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.'" *Id.* (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)).

"Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). The *Standefer* Court articulated a three-part test for determining whether a voir dire question is an improper commitment question. *Id.* at 179–84. First, the trial court must determine whether a particular question is in fact a commitment question. *See id.* at 179. Second, if it is a commitment question, then the court must decide whether it is

nevertheless a proper commitment question. *See id.* at 181. To determine whether the question is a proper commitment question, the court first inquires whether one of the possible answers to the question gives rise to a valid challenge for cause. *Id.* at 182. If it does not, then the question is not proper and should be disallowed by the trial court. *See id.* Third, if the commitment question gives rise to a valid challenge for cause, then the court must determine whether the question contains only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.* at 182.

*Analysis*

The parties agree the question was a commitment question. However, Rivera asserts the question was proper because he sought to determine whether the venireperson was so biased against him if the victims were younger than fifteen years of age that they would find a behavioral abnormality from this fact alone and would not listen to evidence beyond this singular fact. Rivera contends his question gave rise to a valid challenge for cause; thus, the question was proper. The State counters that the question was an improper commitment question because it invited the venirepersons to resolve the issue a certain way after learning a particular fact—a child victim under the age of fifteen.

Rivera asked, "[I]f you hear the facts come off that stand of child victims younger than 15, is that going to affect your ability to move forward and listen to the rest of the facts in the case and answer the question beyond a reasonable doubt whether or not this person is a sexually violent predator?" We begin by inquiring whether one of the possible answers to the question gives rise to a valid challenge for cause. *Standefer*, 59 S.W.3d at 182.

The ultimate question for jurors was whether Rivera was a "sexually violent predator," which is a person that "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE § 841.003(a). Sexually violent offenses include, as relevant here,

indecency with a child by sexual contact and sexual assault.[1] *Id.* § 841.002(8). Behavioral abnormalities are conditions that predispose a person to commit a sexually violent offense, to the extent the person becomes a menace to the health and safety of another person—here, pedophilic disorder. *Id.* § 841.002(2). Given the question that would be posed to the jury, answers to questions regarding child victims and pedophilic disorder could (and did) result in successful for cause challenges.

During voir dire, Rivera inquired numerous times—both of individual venirepersons and of the entire panel, row-by-row—about whether venirepersons could properly sit for a case involving child victims and a diagnosis of pedophilic disorder, which Rivera described to the panel as "a sexual attraction to prepubescent children," being children without developed secondary sex characteristics. When Rivera again inquired of a venireperson regarding a specific "threshold" age, the State objected it amounted to an improper commitment question. At a bench conference, the State argued, "[H]e's specifically going into trying to narrow down age. It is a proper question to ask if someone is unable to follow the law, if they fear that there's an offense against a child. But when you're starting to narrow that down and narrow it down even more and more, I think it is an improper commitment question." Rivera acknowledged that he was "trying to stay away from" delineating a specific age, and the trial court asked Rivera what question he intended to ask. Rivera responded, "My question was whether or not the evidence presented of pedophilic disorder and offenses against children is going to cause her to not listen to the rest of the case?" The trial court authorized the specific question posed by Rivera. Rivera then stated, "And then what's going to happen is she's going to come back and start asking questions about ages; and I'm trying not to

---

[1] On August 30, 1999, Rivera was convicted of indecency with a child for fondling the breasts and buttocks of a ten- or eleven-year-old child. On October 5, 2012, Rivera was convicted of aggravated sexual assault of a child after he fondled and penetrated the anus of a six- or seven-year-old child.

get her there." The trial court replied, "You're just not allowed to ask that question." Rivera responded, "Okay. Perfect." Rivera then asked the trial-court-approved question.

In response to Rivera's questions, several venirepersons stated they would be unable to set aside their biases and prejudices. Other venirepersons offered answers relevant to Rivera's exercise of peremptory strikes. In other words, over the course of voir dire, Rivera obtained sufficient information to (1) discover external biases relating to child victims and pedophilic disorder, (2) determine whether grounds exist to challenge for cause, and (3) allow intelligent use of peremptory challenges. *Hill*, 334 S.W.3d at 229.[2]

Nevertheless, Rivera argues his question sought to determine whether the fact that his victims were younger than fifteen would result in the venireperson finding a behavioral abnormality on this singular fact alone, giving rise to a for cause challenge. We disagree and hold the possible answers to Rivera's question regarding child victims under the age of fifteen do not give rise to a valid challenge for cause. Unlike Rivera's general inquiries, this question isolated one fact—whether child victims were under the age of fifteen—and sought to gauge the venireperson's opinion about the strength of this evidence.

Jurors are entitled to determine the weight of admissible evidence—here, the weight to be given to the specific age of child victims in assessing whether Rivera suffers from a behavior abnormality that predisposes him to commit a sexually violent offense. Therefore, asking about the strength of this isolated fact does not identify external bias or prejudice. *See Vasquez*, 189 S.W.3d at 756 ("By isolating this fact, the question seeks to identify those jurors who agree that the one fact overcomes all others. As reasonable jurors, however, it is within their province to so

---

[2] In *Hill*, the supreme court held the trial court erred in rejecting a line of inquiry because the commitment question "was legislatively mandated: they were asked whether they would require the state to prove both elements of a conjunctive statute." 334 S.W.3d at 229. Unlike *Hill*, Rivera's inquiry of a specific fifteen-year-old threshold does not touch on either legislatively-mandated element.

conclude. The question thus asks the jurors' opinion about the strength of this evidence, and does not cull out any external bias or prejudice."). Put another way, reasonable jurors are entitled to place additional weight on evidence that a child victim was under the age of fifteen when determining whether a person is a sexually violent predator, and such a determination does not result from external bias or prejudice. *See id.* at 753 ("[A] question that asks jurors to judge the weight to be given an operative fact will not reveal whether jurors have potential external biases or prejudices that improperly skew their view of case facts.").

"The trial court in this case reasonably could have concluded that the substance of the proposed question did not present a basis for disqualifying a juror for cause, and instead sought to test the weight jurors would place on the relevant fact . . ." *See id.* at 757–58. Because one of the possible answers to the question does not give rise to a valid for cause challenge, the question is improper, and the trial court did not err in disallowing it. *See Standefer*, 59 S.W.3d at 182. Therefore, we overrule Rivera's first issue on appeal.

## MOTION FOR MISTRIAL

After the jury was selected and before the trial commenced, the trial court conducted a hearing on the parties' respective motions in limine. Rivera had requested that the State be enjoined from "[a]ny mention of any actual or alleged gang involvement on the part of" Rivera. The trial court did not immediately rule on the request but reserved its ruling before any mention at trial.[3] During its opening argument, the State argued as follows:

> He also has this antisocial lifestyle; and that doesn't mean someone's reserved. In this sense, it means that it's rule breaking. The ability to violate rules that you and I abide by quite easily, he is able to break. You will learn that at a very young age, Mr. Rivera has been in trouble with the law. He has, all the way from as a juvenile, convictions of burglary habitation, multiple . . . of those.

---

[3] The court later allowed Dunham to "speak about underlying gang activity, but he [was] not to mention the 'gang' at all."

You'll also hear that he has involvement in gang activity and so forth. And it's also just the general rule breaking. The ability to –

Defense counsel objected and noted his motion in limine. The State acknowledged it was supposed to approach the bench before mentioning gang activity and apologized. Defense counsel requested a mistrial. The trial court denied the motion but instructed the jury as follows:

> Ladies and gentlemen of the jury, I want to remind each of you that opening statements that are made by the [State] and [Rivera] are not evidence. Evidence will be what you hear from the witness stand and whatever exhibits are admitted. So, again, these are just opening statements what people expect the evidence to show. Any mention of gang activity or lack thereof, you are to completely disregard. Does everyone understand?

The jurors responded, "yes," and trial resumed. On appeal, Rivera asserts no instruction could cure the bias that resulted from the State's mentioning gang involvement. Rivera contends the State started the trial with an improper, inflammatory, highly prejudicial comment by tying his alleged "gang activity" to his "rule breaking" and "antisocial lifestyle."

"We will not disturb a ruling denying a motion for mistrial absent a showing of an abuse of discretion." *Bazan v. Munoz*, 444 S.W.3d 110, 123 (Tex. App.—San Antonio 2014, no pet.). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable." *Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019) (per curiam). "When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *In re Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, no pet.).

Here, the trial court promptly instructed the jury to disregard the statement and the jury is presumed to have followed that instruction. *See In re Rudolph Auto., LLC*, 674 S.W.3d 289 (Tex. 2023) ("The presumption that jurors follow curative instructions . . . is not a featherweight to be disregarded without some powerful reason."). Nothing in the record demonstrates (1) the comment had any harmful effect, (2) the jury was unable to follow the trial court's instruction, or (3) the presumption is otherwise rebutted. Accordingly, we overrule Rivera's second issue on appeal. *See id.*

## CONCLUSION

We affirm the trial court's judgment.

Lori I. Valenzuela, Justice